IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

THOMAS P. HARRINGTON           )
                               )
v.                             )    No. 2:06-0046
                               )    Judge Nixon/Bryant
SOCIAL SECURITY ADMINISTRATION )


To:  The Honorable John T. Nixon, Senior Judge


## REPORT AND RECOMMENDATION

        This is a civil action filed pursuant to 42 U.S.C. §

405(g), to obtain judicial review of the final decision of the

Commissioner of Social Security denying plaintiff disability

insurance benefits ("DIB"), as provided under Title II of the

Social Security Act ("the Act"), as amended.  The case is

currently pending on plaintiff's motion for judgment on the

administrative record (Docket Entry No. 15), to which defendant

has responded (Docket Entry No. 22).  Plaintiff has further filed

a reply brief in support of his position (Docket Entry No. 23).

Upon consideration of these papers and the transcript of the

administrative record, and for the reasons given below, the

undersigned recommends that plaintiff's motion be DENIED, and

that the decision of the Commissioner be AFFIRMED.


                I.  PROCEDURAL HISTORY

        Plaintiff protectively filed his DIB application on

1

April 16, 2003, alleging disability as of February 21, 2003, due to lower back pain (Tr. 15, 58). This application was denied at both the initial and reconsideration stages of agency review (Tr. 33-35, 40-41). Plaintiff thereafter requested and received a *de novo* hearing before an Administrative Law Judge ("ALJ"), held on March 1, 2005 (Tr. 392-420). Plaintiff was represented by counsel at the hearing, and testimony was received from both plaintiff and an impartial vocational expert ("VE"). On November 23, 2005, the ALJ issued a written decision denying plaintiff's application (Tr. 14-22). The decision contains the following enumerated findings:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's lower back pain/strain is a "severe" impairment, based upon the requirements in the Regulations (20 CFR § 404.1520(c)). The claimant's depression is not a "severe" impairment within the meaning of the regulations.

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The claimant's statements concerning his impairment and its impact on his ability to work is not entirely credible in light of the degree of medical treatment required, discrepancies between the claimant's assertions and information contained in the documentary reports, the reports of the treating and examining practitioners, the medical history, the findings made

2

on examination, and the claimant's assertions
concerning his ability to work.

6.  The claimant has the following residual functional
    capacity to perform light work.  However, the
    claimant's work must allow him to have the option to
    sit or stand and to avoid frequent bending, stooping,
    climbing or crawling.

7.  The claimant is unable to perform any of his past
    relevant work (20 CFR § 404.1565).

8.  The claimant is an "individual closely approaching
    advanced age" (20 CFR § 404.1563).

9.  The claimant has a "high school (or high school
    equivalent) education" (20 CFR § 404.1564).

10. The claimant has no transferable skills from any past
    relevant work (20 CFR § 404.1568).

11. The claimant has the residual functional capacity to
    perform a significant range of light work (20 CFR §
    404.1567).

12. Although the claimant's exertional limitations do not
    allow him to perform the full range of light work,
    using Medical-Vocational Rule 202.14 as a framework for
    decision-making, there are a significant number of jobs
    in the national economy that he could perform.
    Examples of such jobs include work as a parking lot
    attendant, of which there are 500 such jobs in the
    State of TN and 42,250 nationwide; ticket taker, of
    which there are 500 such jobs in the State of TN and
    27,000 nationwide; cashier, of which there are 1,500
    such jobs in the State of TN and 77,000 nationwide; at
    the sedentary level: as a general office clerk, of
    which there are 2,000 such jobs in the State of TN and
    110,000 nationwide; production worker, of which there
    are 950 such jobs in the State of TN and 34,000
    nationwide; and a small products assembler, of which
    there are 1,000 such jobs in the State of TN and 61,000
    nationwide.

13. The claimant was not under a "disability," as defined
    in the Social Security Act, at any time through the
    date of this decision (20 CFR § 404.1520(g)).

3

(Tr. 21-22)

On April 7, 2005, the Appeals Council denied plaintiff's request for review of the decision of the ALJ (Tr. 7-9), thereby rendering that decision the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based on the record as a whole, then these findings are conclusive. Id.

## II.  REVIEW OF THE RECORD

Plaintiff went to the emergency room on February 21, 2003 after hearing a "pop" when lifting a box onto a pallet at work (Tr. 212-218, 224, 321). After evaluation and treatment, plaintiff was diagnosed with lumbar back pain without fracture (Tr. 225). Plaintiff was instructed to use an ice pack four times a day for two days, then alternate heat and ice (Tr. 221). The doctor ordered no work for two days and modified or light work for seven days, then plaintiff could return to work without restriction (Tr. 220, 225-226).

On February 27, 2003, plaintiff presented to the walk-in clinic at Crossville Medical Group, P.A. (Tr. 321), the group where his longtime family physician, Dr. Douglas Carpenter, was in practice. Plaintiff was seen by Dr. Gary N. Morris at the

4

clinic, who diagnosed a lumbar strain after recounting plaintiff's report of his work-related back injury and his emergency room treatment (Tr. 320). Dr. Morris noted plaintiff's report of pain at a 5-6 on a 10-point scale, that he walked with a mild stooping, and that he displayed positive results on straight leg raise testing at 45 degrees on the right and 40 degrees on the left. Dr. Morris prescribed pain medication and physical therapy, and instructed plaintiff to stay off of work. (Id.) Dr. Morris repeated these findings and prescriptions at each of plaintiff's five return visits over the next month, though there were also notations of symptoms in plaintiff's left leg; plaintiff's overall discomfort was consistently noted, though his back pain was reportedly at a 3 on a 10-point scale during this time. (Tr. 314-19) Dr. Morris ordered magnetic resonance imaging (MRI) of plaintiff's lumbar spine on March 18, 2003 (Tr. 316).

On referral from Dr. Morris, neurosurgeon Joseph A. Jestus, M.D., saw plaintiff on April 3, 2003, with complaints of back pain and left thigh pain (Tr. 16, 235). The MRI Dr. Morris had ordered showed only mild disc degeneration throughout the lumbar spine with no evidence of herniated discs, foraminal stenosis or spinal stenosis (Tr. 16-17, 235, 237, 315). Motor examination was normal (Tr. 17, 235). Plaintiff's gait was

5

markedly antalgic,[1] and he had difficulty bearing weight on his left side secondary to pain (Id.). He had difficulty standing up on a step with either leg, secondary to pain (Id.). Dr. Jestus' impression after examination was low back and left thigh pain secondary to lumbar sprain type injury (Id.). Dr. Jestus explained to plaintiff the natural course of lumbar sprain injuries, telling him that they generally tend to get better (Tr. 235). Dr. Jestus concluded no surgery was needed (Tr. 17, 235).

On April 22, 2003, plaintiff was referred by his employer's worker's compensation carrier to Dr. Toney Hudson of the Occupational Health Center in Cookeville, Tennessee (Tr. 269-71). Dr. Hudson noted moderate signs of symptom magnification upon examining plaintiff, but noted no surgical indication and was optimistic about the prospects for treatment if plaintiff would be willing to discard his self-prescribed cane and pursue a more aggressive therapeutic course. (Tr. 270) Dr. Hudson referred plaintiff to physical therapy with Mr. Fred Bowen, whose initial evaluation of plaintiff included musculoskeletal testing which revealed several self-limited behaviors and a very strong nonorganic component to plaintiff's complaints (Tr. 263-68). Plaintiff still exhibited multiple signs of symptom magnification at his next visit to Dr. Hudson, and complained of pain at a 9 on

---

[1]An antalgic gait is one assumed so as to avoid or lessen pain. Dorland's Illustrated Medical Dictionary 90 (28th ed. 1994).

6

a 10-point scale (Tr. 262). Two weeks later, plaintiff returned to Dr. Hudson with less symptom magnification, though he continued to use his cane, and reported pain at a 3 on a 10-point scale (Tr. 261). At plaintiff's next visit, Dr. Hudson noted more signs of symptom magnification, continued use of his cane, and pain complaints of 5 on a 10-point scale (Tr. 255). On June 16, 2003, at plaintiff's final visit to Dr. Hudson, plaintiff reported pain at a 4 on a 10-point scale. He continued to use his cane against the advice of both Dr. Hudson and Mr. Bowen. Dr. Hudson noted that plaintiff's gait was shuffling but not antalgic, and he declared plaintiff to have "reached maximal improvement from his physical therapy and work conditioning," and released him to full duty work. (Tr. 256)

Plaintiff saw his general practitioner, Dr. Douglas Carpenter, on July 7, 2003, with complaints of lower back pain (Tr. 312). Musculoskeletal examination revealed muscle spasm and severely reduced range of motion ("ROM") (Id.). Neurological examination returned normal (Id.). Dr. Carpenter prescribed medication, and gave instructions not to drive (Id.). He recommended that plaintiff return if his condition worsened or he saw no improvement (Id.).

Neurosurgeon Timothy Schoettle, M.D., saw plaintiff on August 21, 2003 on referral from Dr. Carpenter for evaluation of persisting complaints of back pain with intermittent left thigh

pain (Tr. 17, 286-87). Plaintiff complained he got no relief from pain relievers and felt no improvement in his pain after two weeks of physical therapy or work hardening sessions (Tr. 17, 286). Dr. Schoettle noted that plaintiff had seen multiple physicians and had been released to return to work on June 17, 2003 (Tr. 286-89). Physical examination revealed a well-developed male in no acute distress (Tr. 17, 286). Plaintiff complained of marked tenderness to palpation at the L4-S1 level of his spine; Dr. Schoettle noted that "the patient actually jumps when I palpate these areas. I do not palpate any paraspinous muscle spasm. He also jumps to palpation over either buttock. He has dramatic limitation in range of motion in flexion or extension and will move only about five degrees without severe complaints of pain." (Id.). Straight leg raising test bilaterally created low back pain only (Id.). Vascular and motor examinations were within normal limits (Id.). The impression was back pain, out of proportion to anatomic studies (Tr. 287).

Plaintiff saw Dr. Carpenter on October 3, 2003 (Tr. 305). Musculoskeletal examination revealed mild pain in the thoracic spine with ROM (Tr. 305). Lumbar spine examination revealed severely reduced ROM and muscle spasm (Tr. 305). Neurological examination was normal, although plaintiff used a cane (Tr. 305). Dr. Carpenter prescribed medication, and gave

8

instructions not to drive (Tr. 305).  He recommended that
plaintiff return if his condition worsened or he saw no
improvement (Tr. 305).

In a letter dated October 9, 2003, Dr. Schoettle
indicated that he evaluated plaintiff for complaints of back and
left leg pain (Tr. 17, 279-80, 303-04).  Dr. Schoettle noted that
physical examination revealed that plaintiff had no neurologic
deficits and review of the MRI scan showed only very mild
degenerative facet disease at L4-L5 and L5-S1, but no evidence of
nerve root compression (Tr. 17, 279-80, 303-04, 308-09).  A radio
step bone scan was normal, and flexion/extension lumbar spine
films showed no significant instability with motion efforts (Tr.
17, 279-84, 303-04, 310-11).  Dr. Schoettle noted that his
findings appear to be age related and degenerative, as opposed to
any post-traumatic phenomenon (Tr. 279-280, 303-304).  Dr.
Schoettle opined no surgical intervention was needed and advised
plaintiff to continue with symptomatic treatment (Tr. 17, 279-80,
303-04).

On October 30, 2003, Dr. Carpenter wrote a note
indicating that plaintiff was unable to work, due to pain and
weakness from herniated discs in the back, for an undetermined
length of time (Tr. 302).  Nerve conduction studies performed on
November 4, 2003 returned normal (Tr. 297, 300-01).  Brief
examination revealed no atrophy of the lower extremity muscles

9

and normal strength (Tr. 297). Electromyography studies performed in July 30, 2004, returned normal and demonstrated no evidence of active left lumbar radiculopathy, no evidence of left lumbar plexopathy, and no evidence of a mononeuropathy (Tr. 373-77).

In March 2004, plaintiff saw Dr. Carpenter on two occasions for left elbow pain (Tr. 294-96). Dr. Carpenter did not address plaintiff's back pain at these visits (Tr. 294-96).

On February 15, 2005, plaintiff was seen for an independent medical evaluation by Dr. Walter W. Wheelhouse, upon referral by his attorney (Tr. 378-82). Dr. Wheelhouse reviewed the medical evidence from plaintiff's treating sources and performed his own physical examination. Dr. Wheelhouse found that plaintiff walked with an antalgic gait on his left leg and a noticeable limp; had tenderness and guarding in the lumbosacral spine from L1 to L5, with visible and palpable paravertebral muscle spasm; and, had limited range of motion and positive results on left straight leg raise testing, at 60 degrees sitting and 50 degrees supine. (Tr. 381) Dr. Wheelhouse diagnosed "chronic mechanical low back pain and radiculopathy, status post work injury" (Id.). He assessed permanent restrictions against repetitive bending, stooping, lifting, twisting and turning; against lifting more than 10 pounds occasionally; and against prolonged standing or walking, or

10

sitting more than 20 minutes. (Tr. 382) Dr. Wheelhouse recommended that plaintiff continue with symptomatic treatment of his chronic low back pain, noting that epidural steroid or facet joint injections would likely be of benefit. (<u>Id.</u>)

At the request of the ALJ after plaintiff's hearing, Mark Loftis, M.A., performed a psychological evaluation of plaintiff on May 22, 2005 (Tr. 17, 384-88). Plaintiff complained of anxiety, depression, and insomnia (Tr. 17, 384). Plaintiff stated that he drove himself to the appointment (Tr. 384). Plaintiff reported his activities of daily living included washing dishes, doing laundry, doing some vacuuming and dusting (Tr. 17, 385). Plaintiff reported that he enjoys working on jigsaw puzzles, watching television, and reading (Tr. 17, 385-86). Examination showed plaintiff's memory was intact and that he exhibited appropriate contact with reality (Tr. 17, 387). Mr. Loftis diagnosed depressive disorder, not otherwise specified and assessed that plaintiff appeared to have no cognitive impairment (Tr. 17-18, 387). Mr. Loftis reported that plaintiff had mild limitation in his ability to function cognitively and mild to moderate limitation in his emotional stability (Tr. 18, 388-90).

Plaintiff testified at his hearing that he used only Advil to combat his pain, since the hydrocodone he had been prescribed would make him sleep for 8-10 hours, and he was concerned about the long-term side effects of his prescribed

11

Naproxen (Tr. 405-07). With the use of Advil, his average pain
is about a six on a 10-point scale (Tr. 407). He testified that
he could sit or stand for about thirty minutes before feeling
pain, and that he could only walk about twelve feet without his
cane (Tr. 407-08). He testified that he needed his cane at all
times, but is able to help with minor household chores (Tr. 408-
09). He was awakened by the pain after only three hours of
sleep, unless he took his hydrocodone, after which he would sleep
8-10 hours and wake up in more pain than he felt the night before
(Tr. 409-10). He testified that driving or riding in a car
aggravates his back pain, but he is able to drive short
distances, or longer distances with breaks (Tr. 410-11). He is
able to walk his dog on a leash and go grocery shopping to help
his wife (Tr. 413).

### III.   CONCLUSIONS OF LAW

#### A.   Standard of Review

This Court's review of the Commissioner's decision is
limited to the record made in the administrative hearing process.
Jones v. Sec'y of Health & Human Servs., 945 F.2d 1365, 1369 (6th
Cir. 1991). The purpose of this review is to determine (1)
whether substantial evidence exists in the record to support the
Commissioner's decision, and (2) whether any legal errors were
committed in the process of reaching that decision.  Landsaw v.

12

Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389 (6th Cir. 1999)(citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). It has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." Bell v. Comm'r of Soc. Sec., 105 F.3d 244, 245 (6th Cir. 1996). Even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. Her, 203 F.3d at 389 (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). However, if the record was not considered as a whole, the Commissioner's conclusion is undermined. Hurst v. Sec'y of Health & Human Servs., 753 F.2d 517, 519 (6th Cir. 1985).

B.  Proceedings at the Administrative Level

The claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). At the administrative level

13

of review, the claimant's case is considered under a five-step

sequential evaluation process, as follows:

(1)  If the claimant is working and the work constitutes
     substantial gainful activity, benefits are automatically
     denied.
(2)  If the claimant is not found to have an impairment which
     significantly limits his or her ability to work (a "severe"
     impairment), then he or she is not disabled.
(3)  If the claimant is not working and has a severe impairment,
     it must be determined whether he or she suffers from one of
     the "listed" impairments[2] or its equivalent; if a listing is
     met or equaled, benefits are owing without further inquiry.
(4)  If the claimant does not suffer from any listing-level
     impairments, it must be determined whether the claimant can
     return to the job he or she previously held in light of his
     or her residual functional capacity (e.g., what the claimant
     can still do despite his or her limitations); by showing a
     medical condition that prevents him or her from returning to
     such past relevant work, the claimant establishes a prima
     facie case of disability.
(5)  Once the claimant establishes a prima facie case of
     disability, it becomes the Commissioner's burden to
     establish the claimant's ability to work by proving the
     existence of a significant number of jobs in the national
     economy which the claimant could perform, given his or her
     age, experience, education, and residual functional
     capacity.

Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990).

        The Commissioner's burden at the fifth step of the

evaluation process can be carried by relying on the medical-

vocational guidelines, otherwise known as "the grid," but only if

the claimant is not significantly limited by a nonexertional

impairment, and then only when the claimant's characteristics

identically match the characteristics of the applicable grid

_____

        [2]The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P,
Appendix 1.

14

rule.  Otherwise, the grid can not be used to direct a conclusion, but only as a guide to the disability determination. Id.  In such cases where the grids do not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's prima facie case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert (VE) testimony.  See Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity (RFC) for purposes of the analysis required at steps four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere.  See 42 U.S.C. § 423(d)(2)(B); Foster v. Bowen, 853 F.2d 483, 490 (6th Cir. 1988).

C.  Plaintiff's Statement of Errors

Plaintiff alleges error in the ALJ's failure to credit the assessment of his treating physician, Dr. Carpenter, and in his failure to appropriately analyze the credibility of plaintiff's subjective pain complaints.  As detailed below, the undersigned finds no reversible error in the decision of the ALJ, but rather finds that decision to be substantially supported by the evidence of record.

It is well established that the opinions of treating

15

physicians are presumptively due significant deference because of their familiarity with the claimant and the longitudinal view of the claimant's impairments which the treatment relationship affords. <u>Rogers v. Comm'r of Soc. Sec.</u>, 486 F.3d 234, 242 (6th Cir. 2007); <u>Walker v. Sec'y of Health & Human Servs.</u>, 980 F.2d 1066, 1070 (6th Cir. 1992). However, under the Commissioner's regulations, such treating source opinions are only deserving of controlling weight when clinically well supported and not inconsistent with the other substantial evidence of record. 20 C.F.R. § 404.1527(d)(2); <u>e.g.</u>, <u>Walters v. Comm'r of Soc. Sec.</u>, 127 F.3d 525, 529-30 (6th Cir. 1997)(<u>quoting</u> <u>Bogle v. Sullivan</u>, 998 F.2d 342, 347-48 (6th Cir. 1993)). Even a substantially supported treating source opinion that a claimant is unable to work is not conclusive of the ultimate, legal issue of disability. 20 C.F.R. § 404.1527(e)(1); <u>Walker</u>, <u>supra</u>.

In this case, the ALJ assigned less weight to the opinion of plaintiff's longtime family physician, Dr. Carpenter, than to the assessments of the examining specialists whom Dr. Carpenter consulted, aptly noting the lack of significant clinical or laboratory evidence to support Dr. Carpenter's one-sentence opinion that plaintiff could not return to work due to pain and weakness from herniated discs in his back (Tr. 302), including the absence of any objective evidence of such herniated discs (<u>e.g.</u>, Tr. 315). Plaintiff argues that Dr. Carpenter was

16

the physician who initially treated his lumbar strain on February 27, 2003 (<u>citing</u> Tr. 320-21), though in fact it appears that plaintiff was treated on that day, and in follow-up pursuant to his worker's compensation filing, by Dr. Gary N. Morris in the walk-in clinic associated with Dr. Carpenter's Crossville Medical Group, P.A. (Tr. 314-21). Regardless, plaintiff concedes that Dr. Carpenter referred him to specialists for evaluation and treatment of the February 2003 injury alleged to have caused his disability, including neurologists Jestus, Schoettle, and Ngo, all of whom opined that there was no significant neurological abnormality to be addressed and no surgery indicated, and referred plaintiff back to Dr. Carpenter for symptom management, without assigning any enduring restrictions (Tr. 235-36, 279, 373-77). Assuming *arguendo* that Dr. Carpenter is properly accorded treating physician status for purposes of the impairment alleged here to be disabling,[3] the opinions of the consulting neurologists, supported by the largely benign physical examination findings they recorded, are plainly sufficient to support the ALJ's decision to reject Dr. Carpenter's cursory

---

[3] As defendant points out, among the records provided by the Crossville Medical Group, only three treatment notes were recorded by Dr. Carpenter after plaintiff's February 2003 back injury (Tr. 294-95, 305-06, 312-13), and only two of those visits were related to plaintiff's back symptoms. While Dr. Wheelhouse, an independent medical examiner to whom plaintiff was referred by his lawyer, examined plaintiff in February 2005 and assessed permanent restrictions which would align with Dr. Carpenter's assessment of disability (Tr. 378-82), such evidence no more binds the ALJ than Dr. Carpenter's opinion alone, given the aforementioned opposing substantial evidence from the specialists whom Dr. Carpenter consulted.

17

opinion as to plaintiff's inability to work,[4] which for these purposes is not even a medical opinion but a legal conclusion. 20 C.F.R. § 404.1527(e), (e)(1).

As to the ALJ's treatment of plaintiff's subjective pain complaints, it is argued that the Sixth Circuit's standard for establishing the existence of disabling pain has been met on this record. This standard requires objective medical evidence of an underlying medical condition capable of causing pain, as well as evidence which either objectively establishes the disabling severity of the pain itself, or which establishes that the medical condition is of such a severity as to be reasonably expected to produce such pain. E.g., Duncan v. Sec'y of Health & Human Servs., 801 F.2d 847, 853 (6th Cir. 1986).

Despite the government's misplaced argument to the contrary, plaintiff's objectively established spinal condition is clearly an impairment capable of producing pain in plaintiff's lower back, thus requiring the ALJ to inquire into the severity of the resulting symptoms. However, the CT scan finding of severe degenerative changes in the facet joint at L5-S1 (Tr. 309) did not correlate with any significant positive findings on a bone scan performed at that level of the spine in September 2003 (Tr. 281-82), nor on x-ray (Tr. 285), MRI (Tr. 237), or nerve

---

[4] Cf. Sullenger v. Comm'r of Soc. Sec., 2007 WL 4201273 (6th Cir. Nov. 28, 2007)(reaching same conclusion on similar record of lower back impairment and resulting pain).

18

conduction study/EMG (Tr. 297), and with the exception of some
isolated notations of muscle spasm on examination (Tr. 233, 381),
the record is devoid of objective medical evidence which would
tend to support the level of pain alleged by plaintiff.
Furthermore, while plaintiff has at times complained of a level
of pain greater than that which the objective medical evidence
would support, the ALJ also noted that he has been observed to
"unconsciously overstate physical symptoms" and to obtain good
relief from prescribed medications "when he takes them as
instructed."[5]  (Tr. 18)  Indeed, during a course of medical
treatment and physical therapy with work conditioning in April-
June 2003 (Tr. 254-71), plaintiff was repeatedly noted to display
multiple signs of symptom magnification or an otherwise
nonorganic component to his impairment, including such self-
limiting behavior as refusing to discard his cane despite the
advice of both physician and therapist, and noted overreaction
and excessive pain complaints with every organicity test
administered.  The physical therapist, Mr. Bowen, also noted that
plaintiff had no difficulty walking without his cane, and
periodically walked without limping (Tr. 266).  Though plaintiff
was later found by Dr. Wheelhouse to display only one of five
signs of nonorganic pain (Tr. 381), the ALJ properly took this

---

[5]Notably, at the time of the hearing and on a great many other instances
in the medical record, plaintiff's own assessment of his pain was at 6 or
below on a 10-point scale.  (Tr. 230, 231, 232, 233, 238, 239, 240, 242, 249,
255, 256, 261, 318, 319, 320, 407)

19

evidence of symptom magnification into account in gauging the severity of plaintiff's back pain.[6]

Moreover, plaintiff testified that at the time of the hearing he had current prescriptions for hydrocodone and naproxen for relief of pain, but that he had stopped taking the naproxen after hearing a news report on the long term side effects it may cause, and only took the hydrocodone rarely, as it "knocks [him] out for eight to ten hours." (Tr. 405-06) Plaintiff took only Advil for relief of his back pain, though that over-the-counter medication was effective in reducing his pain to an average of about 6 on a 10-point scale (Tr. 407). In February 2005, Dr. Wheelhouse noted that plaintiff had not had any epidural steroid or facet joint injections, which would be expected to relieve his low back pain to some extent (Tr. 382). As it stands, plaintiff's pain does not prevent him from participating in the upkeep of his home, where he does some of the dishwashing, laundry, vacuuming, and dusting, though he is unable to do the more physical work in the yard (Tr. 385). He is able to drive with some discomfort (Tr. 410-11). The ALJ made note of these

_____

[6]It is noteworthy that the ALJ properly viewed this phenomenon for what it was reported to be: an unconscious component of plaintiff's impairment. Symptom magnification is not synonymous with malingering, the conscious faking of symptoms for external gain. No medical source accused plaintiff of being a malingerer, nor did the ALJ, who indeed found plaintiff to be quite limited by his symptoms. Nonetheless, as a matter of credibility, plaintiff's symptom magnification was properly considered among other factors deemed inconsistent with the claim of total disability. Cf. Pierce v. Louisiana Maintenance Serv., Inc., 668 So.2d 1232, 1238 (La. Ct. App. 1996)(analyzing symptom magnification and credibility in context of worker's compensation denial).

Case 2:06-cv-00046   Document 24   Filed 12/03/07   Page 20 of 22 PageID #: 106

factors in his decision, consistent with the requirements of 20
C.F.R. § 404.1529(c). Accordingly, despite his belief that
plaintiff exaggerated his complaints (Tr. 18), the ALJ partially
credited plaintiff's testimony in finding an RFC for a range of
light work reduced by the need for a sit/stand option and the
need to avoid frequent bending, stooping, climbing or crawling.
The undersigned finds no error in this determination,
particularly in light of the deference the ALJ is due when it
comes to assessing the credibility of witnesses before him.
<u>Jones v. Comm'r of Soc. Sec.</u>, 336 F.3d 469, 476 (6th Cir. 2003).

    In sum, it is clear to the undersigned that substantial
evidence supports the Commissioner's decision in this case, and
that the decision should therefore be affirmed.


IV.   RECOMMENDATION

    In light of the foregoing, the Magistrate Judge
recommends that plaintiff's motion for judgment on the
administrative record be DENIED, and that the decision of the
Commissioner be AFFIRMED.

    Any party has ten (10) days from receipt of this Report
and Recommendation in which to file any written objections to it
with the District Court. Any party opposing said objections
shall have ten (10) days from receipt of any objections filed in
which to file any responses to said objections. Failure to file

21

specific objections within ten (10) days of receipt of this

Report and Recommendation can constitute a waiver of further

appeal of this Recommendation.  Thomas v. Arn, 474 U.S. 140

(1985); Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004)(en

banc).

    **ENTERED** this 3rd day of December, 2007.


                s/ John S. Bryant
              JOHN S. BRYANT
              UNITED STATES MAGISTRATE JUDGE

Case 2:06-cv-00046   Document 24   Filed 12/03/07   Page 22 of 22 PageID #: 108